**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NTUMBA TSHIHAMBA<br>1523 Constitution Ave., NE<br>Washington, DC 20002<br><br>    Plaintiff,<br><br>    v.<br><br>YAZAM INC. d/b/a EMPOWER<br>1307 Dolley Madison Blvd., 4th Floor<br>McLean, VA 22101<br><br>    Defendant. | Case No. 25-CV-3116 (JMC)<br><br>Judge Julia M. Cobb |

**MOTION TO DISMISS**

Defendant Yazam Inc. d/b/a/ Empower ("Empower") hereby moves to dismiss the Complaint in the above-captioned action under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

Empower provides ride-booking software and services to drivers who want to run their own businesses selling their own transportation services to consumers. Empower's customers are drivers, who set their own rates and get 100% of their ride fares. Tens of thousands of Empower customers—many of them first-generation entrepreneurs—use its software to earn more for themselves and their families than they could make driving on behalf of Uber or Lyft.

Plaintiff Ntumba Tshihamba was Empower's customer for six weeks. During that time, Plaintiff used Empower's software and services to arrange rides with consumers. Consumers, in turn, paid Plaintiff for rides that she provided to them. While logged into Empower's software, the

1

Complaint alleges, Plaintiff had a "minor collision." After police arrived on-scene they impounded Plaintiff's vehicle and she had to pay a fine.

Seven days *later*, the D.C. Court of Appeals ruled—for the first time—that, although the relevant D.C. statutes are ambiguous as applied to Empower's business model, Empower nevertheless qualifies as a private vehicle-for-hire company subject to regulation by the D.C. Department of For-Hire Vehicles ("DFHV"). Until that decision, Empower contended very publicly—in and out of court and including to drivers—that the ambiguous statutes did *not* regulate Empower.

Plaintiff asserts claims for fraud, unjust enrichment, and disgorgement/nullification. The fraud claim falls well short of Rule 9(b)'s particularity requirement. Plaintiff does not identify, much less with particularity, the allegedly false and misleading statements that Empower supposedly made to her and what made those statements false and misleading. Regardless, the fraud claim would fail under *any* pleading standard because Plaintiff's short stint as an Empower customer entirely *preceded* the D.C. Court of Appeals' determination of Empower's legal status. Empower cannot have been legally obligated to adopt—let alone preemptively to broadcast—a legal conclusion about the meaning of ambiguous statutes *that it was publicly challenging before the District's highest court*. The Complaint's unjust enrichment and contract nullification claims likewise fail to state those claims for related reasons.

## BACKGROUND[1]

Empower provides mobile ride-booking software applications to drivers and riders. Complaint (ECF 1 at Exhibit A) ¶ 7. For a fee, drivers subscribe to Empower's software and

---

[1] The following background is derived from the Complaint and from a judicial decision incorporated into the Complaint by reference (and of which the Court may take judicial notice). *See, e.g., Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts contained in public records of

services, which help them to arrange and get paid for rides from consumers. Compl. ¶ 12. Drivers who use Empower's platform "set their own rates" and "collect 100% of the fares" for rides they provide to consumers. Compl. ¶¶ 1, 10-11. This is just one of the many ways that Empower has been "decentralizing" and "transforming rideshare"—by giving drivers a clear "alternative to Uber and Lyft" (Compl. ¶ 9) which, unlike Empower, sell transportation services to riders, determine the amount to charge riders, generate their revenue from riders' fares, and pay drivers to provide rides on their behalf. Empower emphatically believes that its different business model is "better for drivers," and thousands of drivers had provided *over two million rides* to *over 150,000 riders* by February 2024. Compl. ¶¶ 9, 20-21.[2]

The Complaint alleges that Plaintiff subscribed to Empower's software and services on January 11, 2024, and paid a monthly fee to Empower for her subscription. Compl. ¶ 32. Six weeks later, on February 22, 2024, Plaintiff says that she was involved in a "minor" traffic collision. Compl.¶ 36. After the police arrived, they impounded Plaintiff's car. Compl. ¶ 37. Plaintiff contends that she had to pay a fine before reclaiming her vehicle from impoundment. *Id.*

As the Complaint acknowledges (at ¶ 30), the D.C. Court of Appeals decided *Yazam Inc. v. D.C. Department of For-Hire Vehicles*, on February 29, 2025—one week *after* Plaintiff's alleged collision, fine, and vehicle impoundment. 310 A.3d 616 (D.C. 2024). Empower had argued before the Court of Appeals and the D.C. Office of Administrative Hearings ("OAH") that it did not qualify for regulation as a private vehicle-for-hire company under the relevant statutes. *See id.* at 622. The Court of Appeals explicitly rejected the District's argument that the relevant statutes

---

other proceedings). As required by rule, Empower accepts Plaintiff's allegations of fact solely for purposes of this motion to dismiss, and without admitting or adopting them.

[2] The complaint greatly understates the number of rides provided by Empower's customers and the number of riders who had used Empower's ride-booking software as of February 2024. As of today, tens of thousands of Empower's customers have provided *over 13 million rides to over 350,000 consumers*.

3

"unambiguously" applied to Empower, *id.* at 623-24, and so "turn[ed] to additional considerations" of "statutory structure and purpose" to decide whether to interpret the law to cover Empower, *id.* at 624. In the end, the Court elected to construe the statute as having been intended to "comprehensively regulate the business of operating vehicles for hire," and therefore resolved the textual ambiguity against creating any "gap in coverage" that would leave Empower outside regulators' purview. *Id.* at 624-25.

Nevertheless, in the same decision, the Court of Appeals unanimously *reversed* DFHV's November 2020 cease-and-desist order (*see* Compl. ¶ 26) as well as the OAH order affirming it (*see* Compl. ¶ 28). *Yazam*, 310 A.2d at 628-29. The Court of Appeals held that DFHV failed to show that Empower's lack of registration or operations had caused or were likely to cause any immediate or irreparable harm to the public. The Court found it especially significant that, after millions of rides, the District could not point to even "a single complaint that is suggestive of irreparable harm." *Id.* at 628.

More than a year later, on July 21, 2025, Plaintiff filed this Complaint in the Superior Court of the District of Columbia. After Plaintiff served the Complaint on August 12, Empower removed this action to this Court on September 10, 2025, pursuant to 28 U.S.C. §§ 1332 and 1441. *See* ECF No. 1 (Notice of Removal). Plaintiff alleges more than $5,500,000 in damages against Empower based on her six weeks as an Empower customer and a one-time fine and vehicle impoundment at the discretion of District law enforcement.

## ARGUMENT

### I. Plaintiff fails to allege fraud with particularity or to state any fraud claim

Under D.C. law, "[f]raudulent misrepresentation requires proof of '(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation.'" *Chedick*

4

*v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (*citing Hercules & Co., Ltd. v. Shama Restaurant Corp.,* 613 A.2d 916, 923 (D.C.1992)); *see also In re U.S. Off. Prods. Co. Sec. Litig.,* 251 F. Supp. 2d 77, 100 (D.D.C. 2003) (same). Rule 9(b) of the Federal Rules of Civil Procedure requires that, for claims of fraud or misrepresentation, "a party must state with particularity the circumstances constituting fraud or mistake." A complaint alleging fraud therefore is required to "'state the time, place and content of the false misrepresentations, the fact that was misrepresented and what was given up or retained as a consequence of the fraud.'" *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (*quoting Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994))); *see also Van Croft v. Horrell*, No. CV 22-3383 (JMC), 2023 WL 6847014 (D.D.C. Oct. 17, 2023) (Cobb, J.) ("boilerplate allegations" of supposed fraudulent conduct do not satisfy the strict standards of Rule 9). Moreover, "mere silence does not constitute fraud unless there is a duty to speak." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (*quoting Saucier v. Countrywide Home Loans*, 64 A.3d 428, 439 (D.C. 2013). The Complaint falls well short of plausibly alleging fraudulent misrepresentation, let alone satisfying the heightened pleading burden under Rule 9(b).

The Complaint (at ¶¶ 7-23) includes a handful of statements and screenshots from Empower's website. But it makes no attempt to identify which of them are allegedly misstatements, let alone to specify how any of those statements were false and misleading:

- Paragraph 11 pastes a "Transforming Rideshare" screenshot from Empower's website, but does not explain what, if anything, is false or misleading about it—especially in how the screenshot describes how being an Empower customer is different from driving for Uber or Lyft.

5

- Paragraph 14 alleges that "Empower promises that drivers can set their own rates; however, in reality, Empower sets the default rates" and "drivers must take affirmative steps to modify them." But that allegation admits the *truth* of Empower's "promise" by acknowledging that drivers *can* and do, in fact, "set their own rates" exactly as "promised."

- Paragraphs 20 and 21 pastes "Better for Drivers" and "Better for Riders" screenshots. Again, Plaintiff fails to allege that any of those statements are false or misleading.

- Paragraphs 22 and 23 describe how accounts for prospective *riders* are set up, and vaguely asserts that such "[p]rospective riders" are not informed of "how" they are able to book rides through Empower's software at a "discounted price" to what Uber and Lyft would charge. But these *rider*-focused allegations do not plead any misrepresentation *to drivers* like Plaintiff—a fatal flaw in its own right—and even as to riders these allegations lack particularity as to what facts have been misleadingly omitted.

- The Complaint's other paragraphs purporting to describe Empower allege operational details—often falsely and without basis—without providing even the faintest whiff of any alleged misrepresentation. *See* Compl. ¶¶ 7-10, 12-13, 15-19.

Plaintiff thus fails to allege, let alone with particularity, which of these statements were false and misleading, and how or why. Additionally, Plaintiff also ignores her burden to plead that Empower *knew* its statements were false and yet made them with the intent to defraud Plaintiff. *See Chedick,* 151 F.3d at 1081; *In re U.S. Off. Prods. Co. Sec. Litig.,* 251 F. Supp. at 100.

After failing to identify any misstatements made by Empower with scienter, the Complaint then turns (at ¶¶ 24-31) to alleging Empower's violation of certain D.C. laws governing private

vehicle-for-hire companies.³ But Plaintiff fails to acknowledge that the cease-and-desist order relied-upon in Paragraph 26, and the OAH order relied upon in Paragraph 28, were both *reversed* by the D.C. Court of Appeals decision relied upon in Paragraphs 30 and 31. *See Yazam*, 310 A.2d at 629. And although the Court of Appeals did hold that Empower is a private vehicle-for-hire company subject to regulation as such in the District (*see* Compl. ¶¶ 30-31), it made that ruling only *after* Plaintiff had already ceased to be an Empower customer. *Compare id.* (relying on February 29, 2024 decision) *with* Compl. ¶¶ 35-36 (alleging Plaintiff's history as an Empower customer ended February 22, 2024).

Under those circumstances, Empower had no duty to disclose to its customers an interpretation of ambiguous statutes with which it disagreed and that it was then actively challenging in court. The fact that Empower's challenge ultimately proved unsuccessful—after Plaintiff stopped using Empower's software—provides no legal basis on which Plaintiff can state a fraud claim. Indeed, courts routinely reject such "fraud by hindsight" allegations. *Cf. Se. Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.,* No. 1:12-CV-00993, 2015 WL 3833849, at *7 (M.D. Pa. June 22, 2015) (rejecting allegations of "fraud by hindsight"); *In re SeaChange Int'l, Inc.,* No. CIV.A. 02-12116-DPW, 2004 WL 240317 (D. Mass. Feb. 6, 2004) (rejecting even that a defendant needed to "disclose the fact that it was likely to lose . . . litigation").

## II. Plaintiff fails to plead unjust enrichment or disgorgement

To state a claim for unjust enrichment, the Complaint must allege that Plaintiff "(1) conferred a benefit on defendant[]; (2) defendant[] retained the benefit that was conferred; and (3) it would be unjust for defendant[] to retain the benefit under the circumstances." *Krukas v.*

---

³ The Complaint falsely (and sanctionably) alleges that Empower fails to perform background checks on drivers. Compl. ¶ 25. Plaintiff knows otherwise, though, including because she was required to submit to such a background check before being able to use Empower's software. Empower reserves all rights with respect to that and other knowingly false and defamatory factual allegations.

*AARP, Inc.*, No. CV 18-1124 (BAH), 2021 WL 5083443, at *11 (D.D.C. Nov. 2, 2021) (*citing Euclid St., LLC v. D.C. Water & Sewer Auth.*, 41 A.3d 453, 463 n.10 (D.C. 2012)). Likewise, doing business without a license voids contracts only in limited circumstances where doing so is necessary to protect the public from "fraudulent and unscrupulous practices." *Constantine Cannon LLP v. Mullen Mgmt. Co.*, 123 A.3d 968, 974 (D.C. 2015).

The Complaint fails to state these claims. Plaintiff appears to claim that her subscription fees, for six weeks of access to Empower's software, somehow unjustly enriched Empower and so should be disgorged. But Plaintiff does not allege—nor could she—that Empower did not provide exactly what she bargained for: ride-booking software and services that Plaintiff could (and did) use to run her own business by arranging rides with her own customers at rates she set and for fares she earned and received. Plaintiff never even alleges that the subscription fees she paid to Empower exceeded the fares she earned while using the software she subscribed to. In the absence of any such allegation, there is every reason to think that Plaintiff came out ahead.[4]

## CONCLUSION

The Complaint should be dismissed with prejudice in its entirety under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure along with any other appropriate relief, including reasonable attorneys' fees.

---

[4] In fact, Plaintiff earned approximately $2,500 over six weeks while paying Empower just $149.00. By contrast, drivers working for Uber are paid only about half of what Uber charges riders.

Dated: Washington, D.C.
September 17, 2025

Respectfully submitted,

/s/ Matthew M. Madden
Matthew M. Madden (#991139)
Hogan Lovells US LLP
555 Thirteenth St NW
Washington, D.C. 20004
Tel: 202-637-6433
Email: matthew.madden@hoganlovells.com

*Counsel for Defendant*
*Yazam Inc. d/b/a Empower*

**CERTIFICATE OF SERVICE**

  I hereby certify that, on this 17th day of September, 2025, a copy of the foregoing Motion to Dismiss was served by electronic filing on counsel for all parties.

            <u>/s/ Matthew M. Madden</u>
            Matthew M. Madden
            *Counsel for Defendant*
            *Yazam Inc. d/b/a Empower*