**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NTUMBA TSHIHAMBA, | |
| Plaintiff, | Case No. 25-cv-3116 (JMC) |
| v. | |
| YAZAM INC. d/b/a EMPOWER, | |
| Defendant. | |

**MEMORANDUM OPINION**

In February 2024, Plaintiff Ntumba Tshihamba was involved in a minor car crash while driving for Defendant Empower, a company that runs a platform connecting drivers with customers seeking rides. When the Metropolitan Police Department responded to the crash, they impounded her vehicle because Empower was not properly registered in the District of Columbia as a rideshare company. Plaintiff filed this suit, alleging that Empower fraudulently failed to inform her that it was "operating illegally" in the District. ECF 1 ¶ 1. Empower moved to dismiss Plaintiff's lawsuit. ECF 7. For the reasons discussed below, Defendant's motion is **GRANTED**.

**I.   Background**

**A.   Factual Background**

Defendant Empower is a "rideshare" company that "dispatches drivers to customers" through an app and operates in "certain markets" in the United States, including the District of Columbia. *See* ECF 1 ¶¶ 7–8.[1] Drivers can subscribe to Empower's platform by paying a monthly fee. *Id.* ¶¶ 12–13. A driver's monthly fee "increases with the revenue he or she generates from

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

completing rides." *Id.* For example, according to Plaintiff, in 2024, drivers earning up to $250 were charged $49.99 whereas drivers earning more than $3,500 were charged $449.99. *Id.* Plaintiff began driving for Empower on January 11, 2024. *Id.* ¶ 32. Plaintiff alleges that on February 22, 2024, she got into a "minor collision" while driving for Empower in the District of Columbia. *Id.* ¶ 36. Plaintiff alleges that when the Metropolitan Police Department arrived at the scene, officers impounded her vehicle "upon learning that [she] was driving for Empower," because, unbeknownst to her, "it was operating illegally in the District of Columbia." *Id.* ¶¶ 35, 37. Plaintiff alleges she had to pay a fine to get her vehicle back and was not reimbursed by Empower. *Id.* ¶¶ 38–39.

**B.    Empower's Operations in the District of Columbia**

In the District of Columbia, rideshare companies are regulated under amendments to the Taxicab Commission Establishment Act of 1985 (the Act). *See* D.C. Code §§ 50-301.29a to .29g. The Act requires "private-vehicle-for-hire companies" to register with the Department of For-Hire-Vehicles (DFHV) and periodically verify that they are meeting other regulatory requirements. D.C. Code §§ 50-301.29a(12), .29g(a); 31 D.C.M.R. § 1902; *see also Yazam, Inc. v. D.C. Dep't of For-Hire-Vehicles*, 310 A.3d 616, 620–21 (D.C. 2024) (*Yazam I*) (listing additional requirements for private vehicle-for-hire operators and private vehicle-for-hire companies under the Act and regulations). The DFHV has authority to "investigate violations of the Act, to promulgate regulations, and to impose sanctions on companies and operators that fail to adhere to the Act" or the DFHV's regulations. *See Yazam, I*, 310 A.3d at 621 (citing D.C. Code §§ 50-301.07(c), .13(g), .29(a)).

In 2020, the DFHV issued a cease-and-desist order (DFHV Order) against Empower after finding that it failed to register with the DFHV, as it contended that Empower was required to do

under D.C. law. ECF 1 ¶¶ 25–26; *see also Yazam I,* 310 A.3d at 621; *Yazam, Inc. v. D.C. Dep't of For-Hire Vehicles*, 343 A.3d 906, 909–10 (D.C. 2025) (*Yazam II*). Empower appealed this order before the Office of Administrative Hearings (OAH), arguing (1) it was not a "private vehicle-for-hire company" because Empower's subscribers were not "private vehicle-for-hire operator[s]" under the Act; and (2) that the DFHV failed to show "any risk of immediate and irreparable harm to the public caused by Empower's failure to register with DFHV." *Yazam I*, 310 A.3d at 621–22. OAH upheld the order. *Id.* at 622.

In its initial decision, the D.C. Court of Appeals reversed OAH's decision on the cease-and-desist order, finding that the DFHV failed to provide sufficient evidence to demonstrate that Empower's failure to register created "a reasonable possibility of immediate and irreparable harm" to the public. *Id.* at 625–27. The DFHV argued "that there had been thousands of complaints about Empower" including from "passengers who had negative experience with drivers," *id.* at 628, but the court found that none of the complaints suggested "a risk of irreparable harm." *Id.* And although the court accepted the DFHV's contention that registration was a "mechanism" for the agency's enforcement of "important safety and consumer-protection requirements," the court did not find that Empower's failure to register alone was sufficient evidence to "support . . . a reasonable belief that Empower and its subscribers were not in fact complying with those requirements."[2] *Id.* at 628–29.

The court did however find that Empower was a "private vehicle-for-hire-company" and was subject to regulation under the Act. *Id.* at 625. Under the Act, a "[p]rivate vehicle-for-hire operator" is "an individual who operates a personal motor vehicle to provide private vehicle-for-

---

[2] The DFHV subsequently issued another cease-and-desist order to Empower for failing to register or submit documentation, which the D.C. Court of Appeals upheld. *Yazam II*, 343 A.3d at 909–11. The DFHV issued this subsequent order several weeks after the events in Plaintiff's complaint, *see id.* at 909, and this order is not relevant to Plaintiff's claims.

hire service *in contract* with a private vehicle-for-hire company." D.C. Code § 50-301.03(16C) (emphasis added). Empower argued that it "lacked the kind of contractual labor relationship necessary . . . to be 'in contract with' its subscribers." *Yazam I*, 310 A.3d at 622. The D.C. Court of Appeals disagreed. Although the court did not define the "precise scope" of the statutory language, it concluded that the contract at issue—"requir[ing] Empower to provide digital-dispatch services to its subscribers/drivers" —fell within the bounds of the D.C. regulatory scheme. *Id.* at 625. The court also reasoned that holding otherwise would create a "gaping loophole" in the D.C. Council's scheme to "regulate the business of operating vehicles for hire" and "individual drivers [who] provide rides for hire." *Id.* at 624–25. The D.C. Court of Appeals issued its decision seven days after Plaintiff's alleged "minor collision" and impoundment of her vehicle. ECF 1 ¶¶ 30, 36 (describing the February 29, 2024 court decision and Plaintiff's February 22, 2024 collision).

### C.    Procedural History

On July 21, 2025, Plaintiff filed a complaint in the Superior Court of the District of Columbia. ECF 1 at 8. Plaintiff alleged one count of "common-law fraud/fraudulent misrepresentation," one count of unjust enrichment, and one count of disgorgement. *Id.* ¶¶ 40–59. Empower removed the action to this Court based on diversity of citizenship and has moved to dismiss the complaint. ECF 1 at 2; ECF 7. Plaintiff filed a response to Empower's motion and Empower replied. ECF 8; ECF 9.

## II.    Legal Standard

Empower moves to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6), but the Court resolves Empower's motion under Rule 12. ECF 7 at 1. For a Rule 12(b)(6) motion for failure to state a claim, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on such a motion, a court is limited to considering the "facts alleged in the complaint, any documents attached to or incorporated in the complaint, and matters of which [a court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). And a court "may take judicial notice of another court's proceedings." *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C. 2015), *aff'd*, No. 15-5136, 2015 WL 9309944 (D.C. Cir. Dec. 7, 2015).[3]

## III.   Analysis

Plaintiff's complaint purports to state three causes of action: (1) common law fraud/fraudulent misrepresentation, (2) unjust enrichment, and (3) disgorgement. *See* ECF 1 ¶¶ 40–59. Disgorgement, however, is a remedy for unjust enrichment claims and does not provide Plaintiff a separate cause of action, so the Court will proceed to analyze her two remaining claims.[4] First, the Court finds that Plaintiff has failed to state a claim for fraudulent misrepresentation. That is because Plaintiff has failed to allege any facts supporting the conclusion that Empower had an affirmative duty to speak about its ongoing litigation against the District of Columbia and the potential consequences of the DFHV's order when the information was publicly and equally available to Plaintiff at the time she subscribed to be a driver. The Court also finds that Plaintiff is barred from recovering on her unjust enrichment claim because Empower counterperformed. That

---

[3] Defendant moved to dismiss Plaintiff's complaint on the ground that it did not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standards. *See* ECF 7 at 1. Since the Court is dismissing Plaintiff's fraudulent misrepresentation claim due to Plaintiff's failure to allege sufficient facts to support that claim under Rule 12(b)(6), the Court need not address Defendant's contention that Plaintiff's complaint does not meet Rule 9(b)'s pleading requirements. *See Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22 (D.C. Cir. 2008) (explaining that the court did not need to assess whether a party's fraud allegations satisfied the particularity requirements of Rule 9(b) when the party failed to allege a requisite element of its fraud claim).

[4] *See* Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. a (2011) ("[R]estitution measured by the defendant's wrongful gain is frequently called 'disgorgement.'"); *see also Liu v. SEC*, 591 U.S. 71, 79 (2020) (explaining disgorgement as an equitable remedy that courts historically used to "deprive[] wrongdoers of their net profits from unlawful activity").

is, Plaintiff does not dispute that she collected fares for rides she booked through Empower's platform as a driver, receiving the promised benefit pursuant to the parties' contract.

### A.    Plaintiff has failed to state a claim for fraudulent misrepresentation.

In the District of Columbia, a plaintiff seeking to assert a fraudulent misrepresentation claim must allege facts supporting five elements: "(1) a false representation or willful omission in reference to a material fact, (2) made with knowledge of its falsity, and (3) with intent to induce the party to rely on the representation or omission, where (4) the party relies upon the representation or omission (5) to its detriment." *Doe v. Roman Cath. Diocese of Greensberg*, 581 F. Supp. 3d 176, 204 (D.D.C. 2022); *see also Schiff v. AARP*, 697 A.2d 1193, 1198 (D.C. 1997). Under D.C. law, "a false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015). "[M]ere silence does not constitute fraud unless there is a duty to speak." *Doe*, 581 F. Supp. 3d at 204–05 (quoting *Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C. 1948)).

Before deciding whether "a nondisclosure was material and resulted in any injury," courts look first to whether there is "a duty to disclose information." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 440 (D.C. 2013). In *Kapiloff*, the D.C. Court of Appeals highlighted that a duty to speak arises only in some contexts. Specifically, the court noted that such a duty arises where: (1) there is a fiduciary or confidential relationship or (2) because of a partial disclosure. *See Kapiloff*, 59 A.2d at 518. Other courts in this district have also acknowledged that a duty to speak may arise where "disclosure of [an] omitted fact is necessary in order to make a defendant's affirmative statements not misleading," *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 266 F. Supp. 3d 110, 127 (D.D.C. 2017), and "where a material fact is unobservable or undiscoverable by an

ordinarily prudent person upon reasonable inspection." *Doe*, 581 F. Supp. at 205; *see also* Restatement (Second) of Torts § 551 (1977) (detailing additional circumstances in which one party to a business transaction is "under a duty to exercise reasonable care to disclose").[5]

Applying these doctrines, the Court will dismiss Plaintiff's fraudulent misrepresentation claim because Plaintiff has failed to allege any facts to establish either that Empower owed Plaintiff a duty to speak or that Empower made any affirmatively misleading statements with respect to its operating status in the District of Columbia. Plaintiff alleges that Empower "falsely represented" the legal status of its operations in the District by (1) "recruiting and accepting drivers . . . onto its platform" to book rides "that began and ended in the District of Columbia" and (2) by "accepting payment of the monthly fee." ECF 1 ¶ 40. According to Plaintiff, Empower knew that it was misrepresenting its operating status in the District because it was aware that it was subject to the DFHV's order and was actively litigating whether it was required to register with the DFHV to continue its operations. *Id.* ¶ 41. Plaintiff also alleges that Empower made these misrepresentations "with the intent to deceive Plaintiff about its business operations" and "to induce Plaintiff to

---

[5] The Restatement of Torts finds that one party to a business transaction has a duty to disclose the following:

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of facts from being misleading; and
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977). The D.C. Court of Appeals has relied on the Restatement (Second) of Torts in several fraud cases. *See, e.g.*, *Va. Acad. of Clinical Psychs v. Grp. Hospitalization and Med. Servs., Inc.*, 878 A.2d 1226, 1238 (D.C. 2005); *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 990 (D.C. 1980); *Jacobs v. Dist. Unemployment Comp. Bd.*, 382 A.2d 282, 287 (D.C. 1978).

continue driving . . . within the District of Columbia" to increase Empower's bottom line. *Id.* ¶ 43. Empower, on the other hand, contends that it had "no duty to disclose" the status of its ongoing litigation with the District and the fact it was subject to a cease-and-desist order. ECF 7 at 7.

Despite referring to misrepresentations, Plaintiff's complaint makes clear that she is advancing a theory of fraudulent misrepresentation by omission. *See* ECF 1 ¶ 1 ("What Empower . . . *has not told* drivers is that it is operating illegally in the District of Columbia . . . ." (emphasis added)); *id.* ¶ 35 ("Plaintiff was also *never informed* by Empower it was operating illegally in the District of Columbia, was violating District of Columbia laws, and that her vehicle was at risk of impoundment." (emphasis added)). Plaintiff acknowledges that, under D.C. law, "silence does not constitute fraud unless there is a duty to speak." ECF 8 at 9 (quoting *Kapiloff*, 59 A.2d at 517).

The Court discerns two lines of argument from Plaintiff's briefing as to why she believes Empower was under such a duty. First, Plaintiff cites *Doe* for the principle that a duty to speak arises "from a situation where a material fact is unobservable or undiscoverable by an ordinarily prudent person upon reasonable inspection." ECF 8 at 9 (quoting *Doe*, 581 F. Supp. 3d at 205). Accordingly, the Court understands Plaintiff to be arguing that the DFHV's order and its consequences were "material fact[s] . . . unobservable or undiscoverable . . . upon reasonable inspection," and therefore Empower had a duty to disclose the information. *Id.*; *see also* Restatement (Second) of Torts § 551(2)(e).[6] Alternatively, Plaintiff contends that Empower made affirmative partial representations through its conduct. ECF 1 ¶¶ 40–45. Plaintiff advances a theory that Empower's conduct—offering its app to drivers in the District and encouraging them to sign up and drive—created an actionable basis for fraud because it was like "a statement that contains

---

[6] Section 551(2)(e) of the Restatement (Second) of Torts establishes that there is a duty to disclose "facts basic to the transaction" if one party "knows that the other is about to enter into [the transaction] under a mistake as to [those facts], and the other . . . would reasonably expect a disclosure of those facts" because "of the relationship between them, the customs of the trade or other objective circumstances." Restatement (Second) of Torts § 551(2)(e).

8

only favorable matters and omits all reference to unfavorable matters." *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 196 (D.D.C. 2016) (citing Restatement (Second) of Torts § 529 cmt. a); *see also Saucier*, 64 A.3d at 440 n.7 ("A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional qualifying matter is a fraudulent misrepresentation." (citing Restatement (Second) of Torts § 529)).

The Court finds that Plaintiff's allegations fail under both theories. First, the information about the DFHV's order and its consequences was publicly and "equally available" to Plaintiff and therefore was not "unobservable or undiscoverable . . . upon reasonable inspection." *Saucier*, 64 A.3d at 440 (stating that there is "no duty to speak" where regulatory information is "equally available to plaintiffs[] and to the [defendants]"); *Doe*, 581 F. Supp. 3d at 205; *see also* Restatement (Second) of Torts § 551 cmt. k.[7] Plaintiff alleges that Empower kept certain facts hidden from her—the existence of the DFHV order and the ongoing litigation about Empower's operating status. But those pieces of information were in the public domain and discoverable by Plaintiff at the time she signed up to be a driver.

In fact, at the time Plaintiff subscribed to Empower in January 2024, there were several public records detailing the DFHV's order and its consequences, including the DFHV's own website. *See* ECF 1 ¶ 32; *see also Hamilton v. Paulson*, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008), *rev'd on other grounds,* 666 F.3d 1344 (D.C. Cir. 2012) (permitting courts to take judicial notice

---

[7] Comment K of section 551 provides:

> [W]hen the plaintiff has equal opportunity for obtaining information that he may be expected to utilize if he cares to do so, . . . there is no obligation to give aid to a bargaining antagonist by disclosing what the defendant has himself discovered . . . The defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself; and if the plaintiff is indolent, inexperienced or ignorant, or his judgment is bad, or he does not have access to adequate information, the defendant is under no obligation to make good his deficiencies.

Restatement (Second) of Torts § 551 cmt. k.

of documents located on government websites because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). As early as September 2023, the DFHV's website contained the following statement: "Please be advised that EMPOWER is not registered with DFHV and is not authorized to operate as a ride share provider in the District. Therefore, driving for EMPOWER will subject drivers to DFHV enforcement including vehicle impoundment."[8] The same webpage also lists approved operators of rideshare services and Empower is clearly excluded.



Since this information was "equally available" to Plaintiff, the Court finds Empower had no duty to affirmatively disclose it to her. *See Saucier*, 64 A.3d at 440. The Court is not seeking to impose significant research burdens on individuals like Plaintiff, but the Court finds that this information was arguably easier for Plaintiff to discover than other public government records that the D.C. Court of Appeals has previously held to be "equally" or "readily" available. *See id.* at 439–40 (finding HUD and FHA loan guidelines to be "equally available" to plaintiffs and defendant mortgage lenders); *Kapiloff*, 59 A.2d at 517 (finding an Act of Congress to be "readily

---

[8] Department of For-Hire-Vehicles, DC.gov.,
https://web.archive.org/web/20230923140342/https://dfhv.dc.gov/page/DDS (last visited June 29, 2026) (snapshot of https://dfhv.dc.gov/page/DDS as of Sept. 23, 2023).

available" to plaintiff and defendant corporation). Because the information about which Plaintiff complains was publicly available, Plaintiff has not sufficiently alleged that Empower engaged in fraud by not affirmatively disclosing it to her.

Next, Plaintiff has not alleged sufficient facts for the Court to find that Empower's conduct —permitting Plaintiff to sign up to drive and book rides beginning and ending in the District of Columbia—constituted partial affirmative misrepresentations. *See* ECF 1 ¶ 40. Incomplete representations can be fraudulent when an affirmative statement is made but the speaker leaves out material information. *See* Restatement (Second) of Torts § 529 cmt. a ("A statement containing a half-truth may be as misleading as a statement wholly false."). For example, in *Jacobson*, another court in this district held that the defendants' statements that a property was "newly renovated" and had an "English Basement set up with full kitchen" were actionable as fraudulent misrepresentations because both statements, while true, left out material information. *Jacobson*, 168 F. Supp. at 196–97. First, although the property was "newly renovated," the defendants omitted the fact the property "did not conform to licensing and zoning requirements and was shoddily constructed." *Id.* Similarly, although the property had an "English Basement set up with a kitchen," the defendants did not disclose that they knew this second kitchen was illegal. *Id.* Since the defendants spoke about these features of the property, they were required to disclose all facts that "might affect the recipient's conduct in the transaction in hand." Restatement (Second) of Torts § 529 cmt. b.

Here, however, Plaintiff has not identified any statements Empower made about its operating status in the District of Columbia that constitute half-truths. In her complaint, Plaintiff cites certain statements on Empower's website and in the Google Play and Apple app stores. *See* ECF 1 ¶¶ 11, 20, 21). But it is clear that those statements—that Empower is "Transforming

Rideshare," "Better for Drivers," "Better for Riders"; or provides "Better service[,] Cheaper fares[,] Greater choice," *id.*—are "classic example[s] of commercial puffery on which no reasonable person would rely" and therefore "cannot form the predicate for a fraud claim." *Jefferson v. Collins*, 905 F. Supp. 2d 269, 283 (D.D.C. 2012) (quoting *Pearson v. Chung*, 961 A.2d 1067, 1076 (D.C. 2008)). Because Plaintiff could not have reasonably understood those statements as providing information related to Empower's operating status in the District, the Court finds that Plaintiff has not shown that those statements triggered a duty of further disclosure.

The Court also finds that it would be stretching the scope of D.C. law to conclude that, by permitting Plaintiff to book and accept rides that began and ended in the District of Columbia, Empower impliedly represented that it was licensed to operate in the District. This contention is similar to the one made by the plaintiffs in *Saucier*, who argued that by approving their loans, the mortgage lender defendants had impliedly represented that the loans satisfied HUD or FHA requirements. *See Saucier*, 64 A.3d at 439. The D.C. Court of Appeals concluded that there was no misleading representation when the loan approvals "contain[ed] no explicit or implied representation" by the mortgage lender defendants about "whether HUD or FHA requirements [were] satisfied." *Id.* Similarly, the Court is not willing to find that by merely permitting Plaintiff to use its app in the District of Columbia, Empower impliedly represented a legal operating status in the District when Plaintiff has not pointed the Court to any explicit or implicit representation Empower made with respect to its status. *See id.* at 440 (finding that it would be "an unwarranted stretch on this record to conclude that the mortgage lenders' statement that a loan has been approved" contained any implicit representations about "the condition or value of the underlying property," "the financial condition of the purchasers," or "whether HUD or FHA requirements have been satisfied by the mortgage lenders"). Because the DFHV order and its potential

12

consequences were publicly available to Plaintiff and Empower made no misleading partial statements about its operating status in the District, the Court will dismiss Plaintiff's fraudulent misrepresentation claim.

> **B.      Plaintiff has failed to state a claim for unjust enrichment.**

Under D.C. law, "[t]he doctrine of unjust enrichment applies when a person retains a benefit (usually money) which in justice and equity belongs to another." *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016). "The recipient of such a benefit has a duty to make restitution to the other person 'if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it." *Id.* (quoting Restatement of Restitution § 1 cmt. c (1937)). To succeed on an unjust enrichment claim, Plaintiff must show (1) that she "conferred a benefit on the defendant; (2) the defendant retain[ed] the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Id.*

Plaintiff contends that restitution or disgorgement of the monthly fee she paid to Empower as a user of its platform is appropriate here because the contract between them was "made in violation of a statutory prohibition designed for police and regulatory purposes" and is therefore "void and unenforceable." ECF 1 ¶¶ 55–58. Empower, on the other hand, argues that Plaintiff cannot recover because (1) "Empower fully performed under the parties' contract and Plaintiff benefitted from that performance," and (2) Plaintiff has not alleged that Empower breached its contract. ECF 9 at 6.

For this analysis, the Court will assume without deciding that, as Plaintiff alleges, the underlying contract was "made in violation of a statutory prohibition" and is therefore unenforceable. ECF 1 ¶ 55. But even then, Plaintiff cannot recover under her unjust enrichment theory because Plaintiff received valuable counterperformance under the allegedly illegal contract.

13

While it is true that "[a] person who renders performance under an agreement that is illegal or otherwise unenforceable for [public policy reasons] may obtain restitution," "[t]here is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement." Restatement (Third) of Restitution § 32 (2011); *see Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 82–83 (9th Cir. 1952) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected."); *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1131–32 (10th Cir. 2008) (recognizing that the majority of jurisdictions preclude recovery for unjust enrichment where the claimant has received valuable counterperformance); *Reg'l Props., Inc. v. Fin. and Real Est. Consulting Co.*, 678 F.2d 552, 564 (5th Cir. 1982) (acknowledging that "courts have nearly always denied restitution of payments made for [unlicensed] services" because "the unlicensed person who received the fee is not unjustly enriched" where "he has done the work promised"); *Remsen Partners v. Stephen A. Goldberg Co.*, 755 A.2d 412, 420 (D.C. 2000) (stating that courts should "disfavor[]" ordering "disgorgement" if doing so "would unjustly enrich the user of the services"). Here, according to Plaintiff's own allegations, the agreement between Empower and its subscribers provides that, in exchange for a monthly fee, Empower will "collect[] and distribute[] fares for rides booked through its app." *See* ECF 1 ¶¶ 12, 14–15. And Plaintiff has not alleged that Empower failed to "collect[] and distribute[] fares" to Plaintiff for the rides she booked through the app. *Id.*; *see also id.* ¶ 33 ("Plaintiff paid the monthly fee to drive for Empower and accept[ed] rides through the Empower app."). In other words, Plaintiff has not alleged that Empower did not hold up its end of the contractual bargain—it operated the platform that allowed Plaintiff to book rides, just as Plaintiff signed up for, and Plaintiff "receive[d] value" for the fees she paid. *Comet Theater Enterps., Inc.*, 195 F.2d at 83. The Court therefore finds that there was no unjust enrichment

14

because Plaintiff "receive[d] the counterperformance specified by the parties' . . . agreement." Restatement (Third) of Restitution § 32. Accordingly, the Court will dismiss Plaintiff's unjust enrichment claim.[9]

*   *   *

Due to Plaintiff's failure to establish that Empower fraudulently misrepresented its operating status in the District, and because Plaintiff is barred from recovery on her unjust enrichment claim, Empower's Motion to Dismiss, ECF No. 7, is **GRANTED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: June 30, 2026

---

[9] In a single line in the conclusion of her opposition brief, Plaintiff requests the Court's leave to amend her complaint, without describing what her proposed amendment would seek to achieve. ECF 8 at 13. The Court will deny the request. First, a request for leave to amend must be filed in a written motion. *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006) ("[A] request for leave must be submitted in the form of a written motion."). Second, without knowing any further details, the Court is skeptical that any amendment would cure the deficiencies identified in the motion to dismiss and in this opinion. Given the bases for the Court's ruling, it is not clear what additional facts Plaintiff could allege to fix the deficiencies identified. *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (recognizing that courts may deny a motion to amend if the amendment would be futile). For example, Plaintiff cannot alter the fact that Empower's operating status in the District was publicly available. Similarly, it appears to be undisputed between the parties that Plaintiff was paid for the rides she gave through the Empower app. Absent further explanation, the Court finds no basis upon which to grant leave to amend. *See* Fed. R. Civ. P. 15(a)(2) (permitting courts to grant leave to amend "when justice so requires").